*Municipal Court of the
City of Boston*
No. T-24864

**JAMES ROSSI**

v.

**HARTFORD FIRE INSURANCE CO.,
ET AL.**

Argued: May 18, 1973 - Decided: Oct. 1, 1973

*Present:* Foster, J. (Presiding), Elam, Doerfer, JJ.

Case tried to *Glynn, J.*

**Foster, J.** This is an action of contract for money due under a fire and theft insurance policy that the plaintiff had with the defendants, covering a 1967 Cadillac, serial #M7131739, as described in said policy. The policy, issued by the defendants Hartford Fire Insurance Company and the Hartford Accident and Indemnity Company was for a period of one year from April 1, 1968 to April 1, 1969. It covered loss by fire and theft, and the alleged loss by theft occurred during its term and while it was in force. The plaintiff brought two counts for the loss of said automobile by theft under the terms of the policy, Count 1 being against the Hartford Fire Insurance Company and Count 2 against the Hartford Accident and Indemnity Company. The answer alleged a general denial, payment, voidness of the policy, an allegation that the policy was only good under certain conditions, no damage had been suffered by the plaintiff, and an allegation that the plaintiff was not the owner of the Cadillac covered by the insurance policy or that he had no insurable interest in said Cadillac. The defendants, at the time of the trial, stated that they were only contesting the issue of whether the plaintiff was the owner of the motor vehicle, so as to be insured under the terms of the policy issued by the defendants.

**At the trial there was evidence showing that:**

On or about January 6, 1968, the plaintiff met a David Wells at the Cadillac-Oldsmobile Automobile Agency on Commonwealth Avenue, Boston. The plaintiff spoke to David Wells about purchasing a 1967 El Dorado Cadillac. On or about January 6, 1968, the plaintiff purchased the 1967 El Dorado Cadillac (being the car in question) from David Wells for $4,600. and paid him in cash. David Wells gave the plaintiff a. bill of sale for said car. David Wells was described as of 126 Fairbanks Street, Keane, New Hampshire. On or about January 11, 1968, the motor vehicle was registered by the plaintiff in Massachusetts, since he lived at 56 Franklin Avenue in Chelsea, and was insured with the same defendant, the Hartford Fire Insurance Company. On or about April of 1968, the plaintiff moved to. 22 Eagle Drive, Salem, New Hampshire, and the car was registered in New Hampshire to the plaintiff and insured by the defendants on April 1, 1968, under policy No. 08GF951486, which was introduced into evidence, and which is part of the plaintiff's declaration, and which is a New Hampshire policy, written in New Hampshire. There was evidence that the plaintiff paid the sales tax to the Commonwealth of Massachusetts on said motor vehicle, and that the car was registered in his name in Massachusetts, and in his name in New Hampshire after he had moved there.

On or about May 13, 1968, the plaintiff

parked his 1967 Cadillac at the Lechmere Sales Parking Lot in Cambridge, Massachusetts, in order to make a purchase, and when he came out, it had been stolen, and the plaintiff reported it to the Cambridge Police Department on that date. The plaintiff gave proper notice and filed proofs of loss seasonably, and had made all payments under the insurance policy so that the policy was in full force and effect at the time of the theft of the motor vehicle. The fair market value of the 1967 Cadillac at the time of the theft was $4,600.00. The defendants refused to pay the plaintiff for the loss.

Joseph MacDonald, Special Agent for the National Auto Theft Bureau, testified that the identification number reported on the plaintiff's car, M7131739, "is a Fleetwood, and that an El Dorado does not have an 'M' number."

Wendall Wilbur, the claims representative for Hartford Insurance Company testified he checked the Clerk's office, the Registry of Motor Vehicles, and he looked for David Wells, the alleged seller, in Keene, New Hampshire, and could not find a David Wells at 128 Fairbanks Street in Keene, New Hampshire, or any listing for David Wells in New Hampshire. He checked the policy records of Keene, New Hampshire.

After the close of the evidence and prior to final arguments, the plaintiff filed requests for rulings, which with the court's disposition thereof were, as follows:

"1. Upon all the evidence a finding for the plaintiff is warranted. Court: *Granted.*

"2. The plantiff has introduced in evidence a prima facie case. Court: *Granted.*

"3. Mere suspicion is not sufficient to overturn as (sic) rebut a prima case. Court: *Granted.*

"4. The policy issued by the defendant to the plaintiff, being a family automobile policy, provided on page 4, of said policy, Section IV, Article 5, "Coverage I — Theft: To pay for loss to the owned automobile or to a non-owned automobile caused by theft or larceny. Court: *Granted.*

"5. The policy issued by the defendants to the plaintiff, provided under Section IV, Article 8, "Definitions", non-owned automobile, means a private passenger automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile, while said automobile or trailer is in the possession or custody of the insured or is being operated by him. Court: *Granted.*

"6. The evidence warrants a finding that the plaintiff was in possession of the automobile on the day and time it was stolen. Court: *Granted.*

"7. If there is an ambiguity in an insurance policy, it is to be interpreted more favorably to the insured. Court: *Granted.*

"8. If the court finds that the plaintiff was

not the owner of the car that was stolen, but was in possession of the automobile at the time it was stolen, the court must find for the plaintiff. Court: *Denied*.

"9. Any affirmative defense set forth by the defendants must be proved by a fair preponderance of the evidence. Court: *Granted*.

"10. The defendants have failed to prove, by a fair preponderance of the evidence, that the plaintiff did not have an insurable interest in the motor vehicle that was stolen from the plaintiff. Court: *Denied*. *See findings*.

"11. If the court finds that the automobile insured by the plaintiff with the defendants on or about May 13, 1968, at the time it was stolen, was in fact a motor vehicle that did not belong to the plaintiff, the plaintiff under the terms of his policy with the defendants had an insurable interest under the terms of policy. Court: *Denied*.

"12. That upon all the law and all the evidence, a finding must be entered on behalf of the plaintiff. Court: *Denied*.

"13. That upon all the law and all the evidence a finding cannot be entered on behalf of the defendants." Court: *Denied*.

"FINDINGS 'I find that the plaintiff was not the owner of the motor vehicle and had no legal or equitable title in it and, as such, had no insurable interest.' "

The plaintiff, being aggrieved by the court's

denial of rulings 8, 10, 11, 12 and 13 seeks this report.

. The plaintiff incorporates and included as part of this report to be referred to by the Appellate Division, the automobile insurance policy covering the fire and theft loss that he had with the defendants at the time of the theft of the motor vehicle, and also, incorporates all of the exhibits he introduced showing ownership; namely, registration, license, and sales tax form issued by the Commonwealth of Massachusetts. The report contains all the evidence material to the questions reported.

The only question is whether the plaintiff had an insurable interest in the 1967 Cadillac El Dorado which he insured with the defendants. We are of the opinion that the plaintiff had such an interest and that the trial justice, in ruling that he did not have an insurable interest, was in error.

In the case of *Morris* v. *Alliance Insurance Co.,* 1 N.J. Misc. (Supreme Court) 315, the court said, ''Where the insured was a bonafide purchaser of an automobile on which a theft insurance policy was issued by the defendant, the title was good against anybody but the original owner, whose signature had been forged to give apparent good title to an intervening owner. tervening owner. None but he (the original owner) can affirm ownership against the plaintiff which he does not do, and

defendant has no right to do it for him. The plaintiff did not knowingly make any false representation to the defendant as to ownership. He supposed he was the unconditional and sole owner . . . So far as defendant is concerned, it is the same as if the automobile had been lost and found by the plaintiff, who is the true owner until evicted by one holding better title. The possession of property is prima facie proof of ttle."

The doctrine enunciated in the *Morris* Case, supra, was adopted by the Massachusetts Appellate Court for the Northern District in *New Amsterdam Casualty Co.* v. *Karl Goldstein*, 35 Mass. App. Dec. 146 (1966). In that opinion, the court cited an excerpt from Blaschfield's Encyclopedia of Automobile Law and Practice, Vol. 6, perm. ed., paragraph 3502 citing the *Morris* case:

"A purchaser in good faith of an automobile for a valuable consideration who is in undisputed possession of it has an interest therein sufficient to enable him to recover on a policy insuring it issued to him while in such possession, despite its having been stolen from the original rightful owner."

In the case of *Womble* v. *Dubuque Fire & Marine Insurance Co.*, 310 Mass. 142, 144, the court said, "By the law of insurance, any person has an insurable interest in property by the existence of which he receives a benefit, or by the destruction of which he will suffer

a loss, whether he has or has not any title in, or lien upon, or possession of the property itself.''

In the action under review, we hold there is ample evidence to support the view of the plaintiff's ''insurable interest''. The plaintiff purchased the vehicle for $4,600 which was later determined to be its fair market value at the time of the purchase. He received a bill of sale. He paid Massachusetts sales tax on the vehicle. He registered it in Massachusetts and thereafter in New Hampshire. He was in undisputed possession at the time of its theft. There was no evidence tending to establish bad faith or any misrepresentation as to title. No person has come forward to assert a title better than that of the plaintiff. No evidence was adduced to establish the circumstances of the original theft if, indeed there was one. The identity of the person who held title to the vehicle prior to its acquisition by the plaintiff is uncertain on the state of the evidence.

It would appear that the only evidence tending to point away from the plaintiff's title was the testimony of the National Auto Theft Bureau to the effect that the vehicle identification number, having a letter ''M'' prefix, would be assigned to a fleetwood model of Cadillac rather than to the El Dorado which the plaintiff acquired.

On the record, it appears that a representa-

tive of the defendant made inquiries to locate the individual who sold the vehicle to the plaintiff. Such investigation resulted negatively but this need not give rise to any inference that David Wells did not have a good title to convey to the plaintiff.

We hold that the trial judge should have granted requests for rulings numbered 12 and 13.

**The judgment for the defendants is set aside and judgment is to be entered for the plaintiff on his declaration with interest from the date of demand and breach of the contract.**

VINCENT A. CANAVAN
  for the Plaintiff

RICHARD S. KELLEY
  for the Defendants